657 A.2d 17

**SAMUEL RAPPAPORT FAMILY PARTNERSHIP, Appellant,**

v.

**MERIDIAN BANK.**

Superior Court of Pennsylvania.

Argued Nov. 30, 1994.

Filed April 11, 1995.

David L. Braverman, Philadelphia, for appellant.

Michael Onufrak, Philadelphia, for appellee.

Before OLSZEWSKI, JOHNSON and HESTER, JJ.

HESTER, Judge:

The Samuel Rappaport Family Partnership appeals from the order entered in the Court of Common Pleas of Philadelphia County on February 1, 1994, which granted Meridian

Bank judgment notwithstanding the verdict. For the reasons set forth below, we affirm.

The facts and procedural history of this case may be summarized as follows. On May 7, 1985, McKlan, Inc., apparently seeking to take over the operation of a Philadelphia restaurant, agreed to lease from several individuals and entities property housing both the restaurant and a delicatessen. The lease, which incorporated by reference a contemporaneously executed escrow agreement, encompassed an initial term of five years and could be renewed at McKlan's option for two additional five-year periods. Although the lease's effectiveness was contingent upon the Pennsylvania Liquor Control Board approving the transfer of the landlords' liquor license, it required McKlan to post a substantial cash security deposit with a named escrow agent pending the Board's decision. In addition, the lease obliged McKlan to substitute an irrevocable $100,000 letter of credit for the cash security deposit upon approval of the liquor license transfer. The terms of the lease required the letter of credit to be drawn on a reputable bank and made payable to the escrow agent upon the presentation of his sight draft [1] and certain other documentation. That documentation was to consist of the escrow agent's certification that McKlan had been given ten days notice of the sight draft's presentment and the landlords' certification regarding the existence of an uncured default.

In August, 1985, Marvin Orleans purchased the property, and the original landlords assigned their interest in the lease to him. I. David Pincus, Esquire, was named the new escrow agent. On October 2, 1985, at McKlan's behest, Central Penn National Bank issued the letter of credit required by the lease. The letter of credit provided that it would remain effective for a period of one year and that payment was contingent upon the bank's receipt of certain documentation. Specifically, it required the presentation of Mr. Pincus's sight draft along with his certification that McKlan had received ten days notice of the presentment. The letter of credit also required the

1. A sight draft may be defined as an instrument payable upon presentment. *Black's Law Dictionary* 1238 (5th ed. 1979).

submission of a certificate signed by Mr. Orleans indicating that an event of default had occurred under the terms of the lease, that McKlan was notified of the default's existence, and that McKlan failed to cure it in a timely fashion.

Following the issuance of the letter of credit, Central Penn merged into Meridian Bank. Meridian subsequently advised both McKlan and Mr. Pincus that all sight drafts seeking payment under the letter of credit would have to be drawn upon it. On September 24, 1986, Meridian amended the letter of credit to extend its effective period for another year. Shortly thereafter, Mr. Orleans died. Later, when appellant purchased the property from Mr. Orleans's estate, the estate assigned the lease to it. None of appellant's agents examined the letter of credit prior to the purchase.

On September 14, 1987, after McKlan instituted bankruptcy proceedings, Meridian again amended the letter of credit to provide for a one-year extension of its effective period. McKlan subsequently defaulted under the lease, and Samuel Rappaport, appellant's sole general partner, examined the letter of credit's terms for the first time. Later, Mr. Pincus submitted a $100,000 sight draft to Meridian, which certified that McKlan had received the requisite notice of presentment. Among the documents accompanying the sight draft was a certification signed by Mr. Rappaport. In that certification, Mr. Rappaport indicated that appellant was the lawful assignee of Mr. Orleans's interest in the lease, that an event of default had occurred under the lease's terms, and that McKlan had failed to cure that default in a timely fashion. In addition, he noted that appellant and McKlan had amended the lease on April 5, 1985, to restate its provisions relating to the letter of credit.

Michael Bohley, one of Meridian's employees, examined both the letter of credit and the documentation supporting the sight draft's presentment. He noticed that Mr. Pincus failed to include in his presentment the required certificate signed by Mr. Orleans. Consequently, Mr. Bohley contacted McKlan to see if it would waive that requirement and permit payment. McKlan's representatives informed him that it would not

consent to payment. Accordingly, Meridian refused to honor Mr. Pincus's sight draft.[2]

On October 28, 1988, shortly after Meridian dishonored the sight draft, appellant filed a complaint against it. In that complaint, appellant asserted causes of action for both breach of contract and breach of the implied warranty of good faith. In addition, it requested a declaration of the parties' rights and obligations with respect to the letter of credit.

On November 18, 1988, Meridian filed an answer and new matter, which denied liability and asserted numerous defenses. The parties subsequently engaged in discovery and filed additional pleadings. On January 6, 1989, alleging that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law, Meridian moved for summary judgment. In support of its request for relief, Meridian relied upon both an affidavit of Mr. Bohley and a memorandum of law. In the memorandum, Meridian asserted, among other things, that appellant lacked the standing necessary to obtain relief.

On May 16, 1989, the trial court denied Meridian's summary judgment motion. Forty-seven months later, a jury found that Mr. Pincus's presentment complied with the terms of the letter of credit and determined that Meridian's improper dishonor of the sight draft caused appellant to sustain $100,-000 in damages. Consequently, the jury awarded appellant the face amount of the letter of credit. Meridian subsequently filed post-trial motions, which reasserted its standing claim and requested both the entrance of judgment n.o.v. and the grant of a new trial. On January 31, 1994, sitting *en banc*, the trial court denied Meridian's request for a new trial. However, the court, which did not address Meridian's standing claim, concluded that Meridian properly dishonored the sight draft due to the presentment's failure to comply with the strict terms of the letter of credit. Accordingly, it granted Meridian judgment n.o.v. This timely appeal followed the entrance of the court's order on the docket.

2. Appellant later evicted McKlan from the leasehold premises.

Raising a purely legal claim, appellant challenges the propriety of the trial court's decision to grant judgment n.o.v. in Meridian's favor. In support of its challenge, appellant relies upon the principles of contract interpretation and asserts that the death of Mr. Orleans created an ambiguity in the terms of the letter of credit, which the jury properly resolved after examining extrinsic evidence. We conclude that this claim entitles appellant to no relief. Consequently, we need not consider questions related to the particularly thorny threshold issue of whether appellant possessed the standing necessary to contest Meridian's failure to honor the sight draft presented by Mr. Pincus.

■■ It is clear in this Commonwealth that issues not asserted in the trial court may not be raised for the first time on appeal. *See Weir v. Weir*, 428 Pa.Super. 515, 631 A.2d 650 (1993); *Kryeski v. Schott Glass Technologies, Inc.*, 426 Pa.Super. 105, 626 A.2d 595 (1993); Pa.R.A.P. 302. Thus, a party cannot rely upon one theory of relief in the trial court and pursue a different theory on appeal. *Kryeski v. Schott Glass Technologies, Inc., supra; Guidry v. Johns–Manville Corp.*, 377 Pa.Super. 308, 547 A.2d 382 (1988).

■ In the present case, our review of the record reveals that appellant did not assert its ambiguity theory in the trial court. Rather, our examination of the record demonstrates that appellant alleged the existence of an obvious mistake in the renewal of the letter of credit which rendered performance impossible. Accordingly, we conclude that the theory of relief presently relied upon by appellant has not been preserved for our review.

Our conclusion in this regard is supported by an examination of both the notes of testimony and certain memoranda filed by appellant. Our review of the notes of testimony reveals that appellant noted in its closing argument that Meridian's sole reason for dishonoring Mr. Pincus's sight draft was the lack of an accompanying certificate signed by Mr. Orleans. *See* Notes of Testimony ("N.T."), 4/14/93, at 109. Consequently, appellant argued that since the letter of credit

had been renewed after Mr. Orleans's death, the document signed by Mr. Rappaport should be considered adequate to satisfy the terms of the letter of credit. *Id.* Appellant attempted to buttress its argument by pointing out that it was to receive any money paid in accordance with the letter of credit and that the requirement at issue was not essential to the lease transaction because no provisions in either the lease or the escrow agreement referred to Mr. Orleans. *Id.* at 110. However, appellant never mentioned the term "ambiguity," never indicated that the death of Mr. Orleans rendered the terms of the letter of credit unclear, and never asked the jurors to resolve any lack of clarity. Furthermore, we note that the notes of testimony are devoid of any indication that appellant requested a jury instruction related to its ambiguity theory.

Our examination of the memoranda filed by appellant in the trial court demonstrates that they essentially are consistent with appellant's trial argument. Those memoranda are nearly identical. While they referred to the term "ambiguity" briefly in both the headnotes and the body, the references were made in conjunction with the term "mistake." Moreover, the thrust of the arguments in the memoranda related to appellant's mistake theory and included no demonstration that an ambiguity even existed. Indeed, we find it instructive that the conclusion of appellant's memorandum in opposition to Meridian's post-trial motions refers only to matters relating to McKlan's allegedly bad faith conduct and appellant's theory of mistake.

As we have demonstrated, the theory utilized by appellant to support its challenge to the contested grant of judgment n.o.v. has not been preserved for our review. However, even if we assumed that appellant had preserved it, we would find appellant's challenge devoid of merit. In this regard, we note that our standard for reviewing the propriety of a grant of judgment n.o.v. is well-established. A grant of judgment n.o.v. is appropriate only in a clear case, one where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *See Scott v. Southwest-*

*ern Mut. Fire Assn.,* 436 Pa.Super. 242, 647 A.2d 587 (1994). Thus, in order to examine the propriety of a decision granting judgment n.o.v. "[w]e must determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference that can reasonably be drawn from the evidence and rejecting all unfavorable testimony and inferences." *Id.,* 436 Pa.Super. at 247, 647 A.2d at 590. We will not reverse the trial court's decision absent the demonstration of either an abuse of discretion or an error of law. *Id.* Keeping these principles in mind, we will examine certain basic principles relating to letters of credit and consider the merits of appellant's claim.

The provisions of the Uniform Commercial Code ("U.C.C."), as adopted by the legislature, govern commercial activity in this Commonwealth. *See* 13 Pa.C.S. § 1101 *et seq.* According to the U.C.C., a letter of credit is "[a]n engagement by a bank or other person made at the request of a customer and of a kind ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." 13 Pa.C.S. § 5103(a). Thus, a transaction involving a letter of credit encompasses at least three distinct agreements: 1) the underlying contract between the customer and the beneficiary, the person entitled to demand payment; 2) the contract between the bank and its customer relating to both the issuance of the letter of credit and the reimbursement of the bank upon honoring a demand for payment; and 3) the letter of credit obligating the bank to pay the beneficiary. *See Sound of Mkt. St. v. Continental Bank Int'l,* 819 F.2d 384 (3d Cir.1987) (applying Pennsylvania law).

█ Moreover, the primary purpose of a letter of credit is to provide the assurance of prompt payment upon the presentation of documents. *See Intraworld Indus. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316 (1975). The issuing bank's obligation under the letter of credit is independent from the other agreements and arises *only* upon the presentation of documents which conform to the requirements of the letter of credit. *See Intraworld Indus. v. Girard Trust Bank, supra* (issuer deals only in documents and must honor demand for

payment if documents conform with letter of credit); *Sound of Mkt. St. v. Continental Bank Int'l, supra*, 819 F.2d 384 (the three agreements created by letter of credit transaction remain distinct); *Five Star Parking v. Philadelphia Parking Auth.*, 703 F.Supp. 20 (E.D.Pa.1989) (obligation under letter of credit separate and distinct from any contract or course of dealing between bank's customer and beneficiary of letter of credit; issuer charged only with reviewing documents to determine if they conform with the requirements of the letter of credit).

In the present case, appellant attempts to overcome the necessity of presenting documents which conform strictly to the requirements of the letter of credit. Specifically, appellant asserts that the death of Mr. Orleans rendered ambiguous the question of the continuing vitality of the requirement of the letter of credit regarding the presentation of a certificate signed by him. Thus, appellant argues that the jurors' verdict was supported by adequate evidence. We reject this claim.

■■■ Generally, under the U.C.C., the law of contracts may be utilized to supplement the law relating to letters of credit as long as it does not interfere with the unique nature of letters of credit. *See Tradax Petroleum American, Inc. v. Coral Petroleum, Inc.*, 878 F.2d 830 (5th Cir.1989). Consequently, rules of contract interpretation which are not inconsistent with the nature of letters of credit may be utilized to examine the terms of a letter of credit, determine whether they are ambiguous, and resolve any perceived ambiguity. In this regard, we note:

It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982). When the words of a contract are clear and unambiguous, the intent is to be found only in the express language of the agreement. *Id.* Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract. *D'Huy [v. D'Huy*, 390 Pa.Super. 509, 568 A.2d 1289 (1990) ]. Where the contract terms are ambiguous and susceptible of more than one reasonable interpretation, however, the court is free to receive extrin-

sic, *i.e.,* parol evidence, to resolve the ambiguity. *Id.* A contract will be found ambiguous:

> if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Z & L Lumber Co. of Atlasburg v. Nordquist,* 348 Pa.Super. 580, 585–86, 502 A.2d 697, 700 (1985) (citations omitted).

> Ambiguity within a contract may be latent or patent. A patent ambiguity appears on the face of the contract and is a result of defective or obscure language. *Id.* A latent ambiguity arises from collateral facts which make the meaning of the contract uncertain, although the language appears clear on the face of the contract. *Id.*

*Krizovensky v. Krizovensky,* 425 Pa.Super. 204, 211–12, 624 A.2d 638, 642–43 (1993). Thus, extrinsic evidence may be utilized to demonstrate the existence of a latent ambiguity. *See Lohmann v. Piczon,* 338 Pa.Super. 485, 487 A.2d 1386 (1985).

> While courts are responsible for deciding whether, as a matter of law, written contract terms are either clear or ambiguous, it is for the fact finder to resolve ambiguities and find the parties' intent. *Easton v. Washington County Insurance Co.* 391 Pa. 28, 137 A.2d 332 (1957); *Castellucci v. Columbia Gas of Pennsylvania, Inc.,* 226 Pa.Super. 228, 310 A.2d 331 (1973).

*Metzger v. Clifford Realty Corp.,* 327 Pa.Super. 377, 385–86, 476 A.2d 1, 5 (1984).

 It is undisputed that the requirement in the letter of credit relating to the presentation of a certificate signed by Mr. Orleans facially is unambiguous. Consequently, the ques-

tion becomes whether that requirement latently was ambiguous. Appellant claims that extrinsic evidence establishing Mr. Orleans's death rendered the question of the requirement's continuing vitality latently ambiguous. In support of that claim, appellant relies upon *Frickert v. Deiter Bros. Fuel Co.,* 464 Pa. 596, 347 A.2d 701 (1975), *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 190 A.2d 298 (1963), and *Ress v. Barent,* 378 Pa.Super. 397, 548 A.2d 1259 (1988), cases in which our courts found ambiguities arising in connection with the death of a party to a contract.

We have examined those cases with care and conclude that they are distinguishable from the situation instantly at issue. While the terms of the letter of credit conditioned payment, in part, upon conduct to be performed by Mr. Orleans, Mr. Orleans clearly was neither its beneficiary nor its issuer. Thus, he was not a party to the document. *See Sound of Mkt. St. v. Continental Bank Int'l, supra* (discussing the three separate agreements in a letter of credit transaction). Accordingly, we find appellant's reliance upon the cited cases misplaced.

The death of Mr. Orleans did not render the provisions of the letter of credit ambiguous regarding the continuing necessity of submitting a certificate signed by him in order to obtain payment. Rather, it rendered performance on the requirement impossible. Although appellant characterizes this conclusion as "ludicrous," *see* Appellant's brief at 19, we believe that it conforms with both the nature and purpose of letters of credit. As mentioned previously, the purpose of letters of credit is to assure prompt payment upon the presentation of documents. Moreover, the issuer's payment obligation comes into play *only* upon the presentation of conforming documents. Finding an ambiguity due to the death of a person mentioned in a letter of credit would have the practical effect of requiring banks and other issuers to go beyond the mere examination of documents to determine whether they facially comply with the terms of the letter of credit. Specifically, issuers would have to determine whether all such people are living and adjust the requirements of the letter of credit

accordingly. Such a result would destroy the assurance of prompt payment and lead to uncertainty regarding the requirements necessary to obtain payment. Consequently, it would impair the basic utility of letters of credit.

Our resolution affects only Meridian's payment obligation under the letter of credit. It has no impact upon appellant's rights, if any, against McKlan. In addition, we note that had appellant's agents examined the terms of the letter of credit prior to completing the purchase of the leasehold premises, this entire litigation might have been avoided. Had appellant's agents examined the letter of credit's terms prior to the purchase, appellant could have declined to complete the transaction or made the purchase contingent upon Mr. Pincus and McKlan agreeing to modify the requirement at issue. *See* 13 Pa.C.S. § 5106(b) ("Unless otherwise agreed once an irrevocable credit is established as regards the customer it can be modified or revoked only with consent of the customer and once it is established as regards the beneficiary it can be modified or revoked only with his consent."). In the event that appellant chose to exercise neither of those options and completed the purchase, it promptly could have attempted to invoke a lease provision requiring McKlan to take all action necessary to cause the letter of credit to remain in full force and effect during the term of the lease. *See* Lease § 56(b). Appellant's agents, however, did not examine the terms of the letter of credit until after McKlan had declared bankruptcy and defaulted and thus, could not exercise any of the described options. Accordingly, appellant must bear the burden of the impossibility of performance occasioned by Mr. Orleans's death.

As we have concluded that the terms of the letter of credit were not rendered ambiguous by the death of Mr. Orleans, they must be considered to embody the intent of both Meridian and Mr. Pincus. Thus, the premise underlying appellant's challenge to the trial court's grant of judgment n.o.v. to Meridian must fail. Accordingly, we need not consider other issues related to appellant's challenge and decline to disturb the trial court's decision.

Relying upon Pa.R.A.P. 2741, appellant requests an award of costs. However, as we have affirmed the order of the trial court, appellant is not entitled to such an award. Indeed, costs must be taxed against it. *See* Pa.R.A.P. 2741(2) ("If an order is affirmed, costs shall be taxed against the appellant unless otherwise ordered.").

Meridian, however, requests an award of counsel fees. In support of its request, Meridian relies upon Pa.R.A.P. 2744, which permits us to award counsel fees upon determining that an appeal is frivolous. Specifically, Meridian implies that the appeal was frivolous since appellant raised issues not preserved in the trial court. Although we have concluded that the issues raised by appellant were waived, we decline to exercise the discretion granted to us by the rule and impose the fees requested by Meridian.

Order affirmed.

OLSZEWSKI, J., files a concurring statement.

OLSZEWSKI, Judge, concurring:

We are constrained to concur with the majority that Mr. Rappaport cannot avail himself of the letter of credit. The letter required that Mr. Orleans, as landlord, sign a certificate that his tenants had defaulted on their rent payments. Orleans died and Rappaport bought the property, assuming all of Orleans's rights. When the same tenants defaulted, Rappaport signed the certification of default as landlord, explaining that he was Orleans's lawful assignee under the lease.

While common sense would dictate that Rappaport stood in Orleans's shoes as landlord, the law of letters of credit does not follow the dictates of common sense. Rather, it follows a rule of strict compliance. The letter required Orleans's signature, and once he died, the letter of credit became worthless. It was Rappaport's burden to discover this, and because he did not, he cannot blame the Bank for refusing to honor the letter. Such a departure from reasonable expectations might be unconscionable in the realm of consumer transactions. In

the sophisticated area of high finance, it is a valid risk-shifting device.

We therefore concur in the result reached, despite its harsh and counter-intuitive appearance.