J-A18044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TARA S. BRICKER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | |
| Appellee | No. 102 MDA 2014 |

Appeal from the Decree December 19, 2013
In the Court of Common Pleas of Franklin County
Civil Division at No(s): 2010-2798

BEFORE:  LAZARUS, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                **FILED AUGUST 22, 2014**

Tara S. Bricker appeals from an order granting summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and denying her cross motion for summary judgment.[1]    After

_____

[1] Our standard of review in cases of summary judgment is well settled.  This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law.  ***Karoly v. Mancuso***, 65 A.3d 301, 309 (Pa. 2013).    Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Pa.R.C.P. 1035.2.  In determining whether to grant summary judgment, a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party.  ***Karoly***, 65 A.3d at 309. Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. ***Merriweather v. Phila. Newspapers, Inc.***, 684 A.2d 137, 140 (Pa. Super. 1996).

careful review, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

In 2000, Bricker purchased an automobile insurance policy from State Farm Fire and Casualty Company ("Fire and Casualty"), under policy number 016-4416. Bricker rejected her right to underinsured motorist (UIM) protection around the time she purchased that policy. On August 18, 2004, Bricker signed a rejection of UIM benefits form, as well as several other forms setting forth and acknowledging the limits of her policy. Some of these forms referred to a policy that became effective on September 1, 2004, but all referred to the original policy under number 016-4416. On September 1, 2004, policy number 016-4416 expired. On that date, State Farm Mutual issued a new policy, under number 0730-575-38. Fire and Casualty and State Farm Mutual are separate entities.[2]

The trial court set forth the subsequent factual and procedural background as follows:

> [Bricker filed a] declaratory judgment action . . . on July 6, 2010 stem[ming] from a January 3, 2005 auto accident in which Bricker's Honda Civic was hit by a pickup truck driven by Matthew Geiman ("Geiman"). At the time of the accident Bricker

---

[2] In fact, State Farm Fire and Casualty Company is a wholly owned subsidiary of State Farm Mutual Automobile Insurance Company. ***See*** Disclosures, State Farm, https://www.statefarm.com/customer-care/disclosures/terms-of-use (last visited July 30, 2014).

was insured by [State Farm Mutual] under policy number 0730-575-38.

What [was] in dispute and . . . at the center of [the] declaratory judgment action [was] whether or not Bricker had [UIM] coverage under her State Farm [Mutual] policy effective September 1, 2004.

Bricker and her husband, Todd Bricker, asserted a claim against Geiman for injuries that were sustained in the auto accident. Geiman's insurance had limits in the amount of $50,000 per person/ $100,000 per accident and settled for $58,945.50. Of that $58,945.50, $13,945.50 was for medical expenses of Bricker's minor child and $45,000 was for the claims of Bricker and her husband.

As a result of alleged losses and damages from the auto accident that exceeded the $50,000 limit of liability insurance coverage under Geiman's policy, Bricker asserted a claim against State Farm [Mutual] for underinsured motorist coverage. [State Farm Mutual asserted] in the Answer and New Matter filed August 16, 2010, that the Rejection of [UIM] Protection form that Bricker signed on August 18, 2004 [applied] to the policy issued by them effective September 1, 2004.

Trial Court Opinion, 12/19/13, at 1-3. Bricker and State Farm Mutual filed cross motions for summary judgment. The trial court determined that the UIM rejection form complied with section 1731(c)[3] of the Vehicle Code,

_____

[3] Section 1731 of the Vehicle Code states:

(c) Underinsured motorist coverage. --Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:

REJECTION OF UNDERINSURED MOTORIST PROTECTION

*(Footnote Continued Next Page)*

noting that Bricker did not provide an explanation as to why she signed the forms on August 18, 2004. Ultimately, the trial court found that Bricker's rejection of UIM coverage was valid, denied her motion for summary judgment, and granted State Farm Mutual's motion for summary judgment. The instant appeal followed.

*(Footnote Continued)* ——————————

> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.
>
> Signature of First Named Insured
>
> Date
>
> (c.1) Form of waiver. --Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S. § 1731(c) & (c)(1).

**ISSUES**

On appeal, Bricker raises the following issues for our review:

(1)    Did the lower court commit an error of law in its conclusion and interpretation of documents and language other than the statutorily mandated language of the Rejection of Underinsured Motorist Protection in reaching its decision?

(2)    Is the "Rejection of Underinsured Motorist Protection" form signed by Bricker on August 18, 2004, which expressly noted her rejection of underinsured motorist coverage under "this policy" and identified the policy by the policy number for insurance coverage under which Bricker was then insured with [Fire and Casualty] is not a valid rejection form pertaining to the policy subsequently issued by [State Farm Mutual], effective September 1, 2004, where the only identification of coverage to which the form pertains is policy number [016-4416], the policy number of [Bricker's] coverage with [Fire and Casualty], a separate insurance company entity with which [Bricker] had insurance coverage on the date that she signed the form?

(3)    Is the Rejection of Underinsured Motorist Protection form signed by [Bricker] on August 18, 2004, ambiguous with regard to the insurance coverage to which it pertains where the form expressly applies to "underinsured motorist coverage under this policy" and, in the printed space for indication of "Policy Number," reflects the number [016-4416], the policy number for the coverage under which [Bricker] was then insured with [Fire and Casualty], requiring, as a matter of law, that the form be interpreted in favor of the insured with the result that it does not constitute a valid rejection of underinsured motorist coverage under [Bricker's] policy subsequently provided by . . . State Farm Mutual . . . ?

Brief of Appellant, at 5-6 (order modified).

**DISCUSSION**

Bricker argues that the "Important Notice" section of the policy constituted extraneous evidence which should not have been considered by

the trial court to determine the ultimate issue in the case – to which policy the UIM rejection form pertains.

Instantly, the "Important Notice" contained Bricker's name, the policy number 016-4416, the date September 1, 2004, and directly below these items, the following statement:

> I understand that this acknowledgment of coverage selection shall be applicable, **as of the date specified above, to the policy of insurance identified above, on all replacement policies and on all renewals of either this policy or any replacement policy**, unless I request in writing a different selection for such coverage.

State Farm Insurance Policy No. 016-4416, Important Notice, 8/18/04 (emphasis added).[4]   Because the UIM rejection form was not a discrete contract, but was part of the larger insurance policy, which included the "Important Notice" as well as other terms spanning several distinct documents, Bricker's first argument fails.  *See Storti v. Minn. Mut. Life Ins. Co.*, 479 A.2d 1061, 1062 (Pa. Super. 1984) (multiple separate documents composing insurance contract).  In fact, the trial court would have acted in error had it *not* read the form in the context of the full contract.  *See Halpin*, 639 A.2d at 39 ("When determining whether a contract is ambiguous, a court must view the contract as a whole and not in discrete units.").

_____

[4] *See* State Farm Mutual's Br. Opp'n Pl.'s Mot. Summ. J., Ex. A.

Bricker next argues the trial court erred, as a matter of law, by granting State Farm Mutual's motion for summary judgment, because it incorrectly determined the UIM rejection form she signed on August 18, 2004, pertained to the policy with State Farm Mutual effective September 1, 2004. Bricker also argues, in the alternative, that the policy was ambiguous, and should, therefore, be construed in her favor as the insured. After a close review of the entire insurance policy, which includes the relevant UIM rejection form, we agree.

In Pennsylvania, automobile insurance companies are required to offer UIM protection with every insurance policy sold. 75 Pa.C.S. § 1731(a). Insured individuals are not required to purchase this coverage, but, to opt out, they must sign and date a rejection form, which must be on its own sheet of paper, and which must contain the exact language prescribed in section 1731(c). **Id.** Deviations from the specific statutory requirements in the wording or procedures surrounding the UIM rejection will render it void. **See Jones v. Unitrin Auto & Home Ins. Co.**, 40 A.3d 125, 131 (Pa. Super. 2012). Without a valid rejection, the insured has not rejected UIM protection. **See Nat'l Union Fire Ins. Co. v. Irex Corp.**, 713 A.2d 1145, 1153 (Pa. Super. 1998).

Instantly, the UIM form Bricker executed on August 18, 2004, is valid, as it meets all the statutory requirements of section 1731: it contains the mandatory statutory language; it is written on a separate sheet of paper; and it has Bricker's dated signature. What remains uncertain is to which

insurance policy the rejection of benefits pertains. State Farm Mutual contends that the change was a "Standard to Mutual" transfer, however, Bricker emphasizes that these were separate policies issued through distinct entities.

An insurance policy is a contract, and is subject to the normal rules of contract interpretation. *Am. & Foreign Ins. Co. v. Jerry's Sports Ctr., Inc.*, 2 A.3d 526, 540 (Pa. 2010). As such, our review is *de novo*. *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007). The primary goal in interpreting a contract is to determine the intent of the parties, and the best way to arrive at this intent is to look to the plain language of the instrument. *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). We do not look at the terms of a contract in isolation, but in the context of the contract as a whole. *Halpin v. LaSalle Univ.*, 639 A.2d 37, 39 (Pa. Super. 1994). The language of a contract should be given its plain meaning, but if ambiguity exists, the particular ambiguous provision is to be construed in favor of the insured. *Am. & Foreign Ins. Co.*, 2 A.3d at 540.

A contract is ambiguous if the following is present:

[I]t is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Samuel Rappaport Family P'ship v. Meridian Bank*, 657 A.2d 17, 21-22 (Pa. Super. 1995) (quoting *Z & L Lumber Co. of Atlasburg v. Nordquist*, 502 A.2d 697, 700 (Pa. Super. 1985)). Our Supreme Court has stated:

> Contractual language is ambiguous if it is reasonably susceptible [to] different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

*Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006) (internal citations and quotations omitted).

The trial court considered the various documents that Bricker signed on August 18, 2004, and concluded that there was no ambiguity as to which policy they pertained. The UIM rejection form included two boxes containing text. The upper box contained the required statutory language, Bricker's signature, and the date (August 18, 2004). The lower box contained Bricker's name, the date (August 18, 2004), the policy number 016-4416, and the following statement:

> I understand that this acknowledgment of coverage rejection shall be applicable, as of the date specified above, to the policy of insurance identified above or for which application is being made, on all replacement policies and on all renewals of either this policy or any replacement policy, unless I request in writing a different selection for such coverage.

State Farm Insurance Policy No. 016-4416, Rejection of Underinsured Motorist Protection, 8/18/04.[5] The trial court's decision to grant State Farm Mutual's motion for summary judgment rested, in part, upon reading the UIM rejection form as referring to the policy beginning on September 1, 2004, bearing policy number 073-0575-38.

However, Bricker signed the form on August 18, 2004, and it plainly referred to policy number 016-4416. Additionally, the UIM form has the names of both "State Farm Fire and Casualty Company" and "State Farm Mutual Automobile Insurance Company" written across the top, lending no certainty as to which policy or entity the form pertained. Nowhere does the UIM rejection form refer to policy number 073-0575-38. Reading the UIM form in conjunction with the Important Notice complicates matters further. Although the Important Notice states the coverage selection is applicable as of the date specified above (September 1, 2004), it also refers to policy number 016-4416, which expired on that date. The inconsistencies that plague the Important Notice are also present in the form entitled "Tort Options."

An examination of the entire policy, taking into account its factual context, *see Prudential*, 903 A.2d at 1174, yields more questions than answers. The UIM rejection form states that it "shall be applicable, as of the

---

[5] *See* State Farm Mutual's Br. Opp'n Pl.'s Mot. Summ. J., Ex. A.

date specified above, to the policy of insurance identified above or for which application is being made, on all replacement policies and on all renewals of either this policy or any replacement policy[.]" State Farm Insurance Policy No. 016-4416, Rejection of Underinsured Motorist Protection. Although State Farm Mutual characterizes the context of the August 18, 2004, signing as a "Standard to Mutual transfer," the record lacks anything other than State Farm Mutual's allegations that Bricker signed the forms in anticipation of a new policy. To the contrary, Bricker contests that the forms she signed related to the State Farm Mutual policy. As such, we lack knowledge of the facts surrounding the signing of the forms to classify the new policy as a "renewal" or "replacement." We are unable to find anything in the record that explains why Bricker signed the forms on August 18, 2004, other than the parties' self-serving allegations.[6]

The plain language of the policy, taken as a whole, leaves doubt as to which policy the forms actually refer, and the factual record is not sufficiently developed to aid in the clarification of this ambiguity. Accordingly, we conclude, as a matter of law, that the forms are ambiguous as to which policy they refer.

When a term in an insurance contract is ambiguous, courts are to construe it in favor of the insured. *Am. & Foreign Ins. Co.*, 2 A.3d at 540;

---

[6] We note that the parties submitted no affidavits nor took any depositions to support their motions for summary judgment and responses thereto.

*Wall Rose Mut. Ins. Co. v. Monross*, 939 A.2d 958, 963 (Pa. Super. 2005); *Standard Venetian*, 469 A.2d at 566. The insurance company, "being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Prudential*, 903 A.2d at 1178 (quoting *U.S. Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.*, 687 N.E.2d 717, 719 (Ohio 1997)). However, this rule does not "absolve the court of its obligation to consider the written circumstances from which the written instrument sprang. If extrinsic evidence will aid in the resolution of ambiguities, the court must look to it." *DiFabio v. Centaur Ins. Co.*, 531 A.2d 1141, 1142 (Pa. Super. 1987).

When an insurance company argues that a policy exclusion absolves it of the obligation to provide coverage, it has asserted an affirmative defense. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). Accordingly, the insurance company bears the burden of proving its defense. *Id.* In *Mt. Lebanon v. Reliance Ins. Co.*, 778 A.2d 1228, 1234 (Pa. Super. 2001), this Court reversed an order granting the insurance company's motion for judgment on the pleadings where it found that the insurance company had failed to present any evidence satisfying its burden to prove that the policy unambiguously excluded coverage. In *DiFabio*, this Court held:

> If extrinsic evidence will aid in the resolution of ambiguities, the court must look to it. If, moreover, the extrinsic evidence raises disputed issues of material fact, the court must refer those

issues to the fact finder.  Only in the absence of useful extrinsic evidence will the court construe ambiguous contract language against the drafter as a matter of law.

531 A.2d at 1142-43 (citations omitted).

Here, State Farm Mutual asserted an affirmative defense, and, therefore, it had the burden to prove that defense.  The ambiguity surrounding to which policy the UIM form refers precluded State Farm Mutual from satisfying its burden with the form alone.  As a result, the trial court was required to look to extrinsic evidence to resolve the ambiguity.  Unfortunately, the record is devoid of evidence supporting State Farm Mutual's position.

Moreover, the UIM form's compliance with section 1731(c) is not relevant to the salient issue in this appeal, namely, to which policy the document relates.  The trial court's finding that the policy was clear on its face is unsupported by a reading of the plain language of the document, and the factual record is too sparse to resolve the confusion.  Finally, the trial court rests its decision on inferences that are unsupported by the record.  It notes that Bricker signed the forms on August 18, 2004, but then accepts State Farm Mutual's assertion that the forms related to the new policy, dated September 1, 2004, without any evidence to support the truth of that assertion, or even to clarify the circumstances or purpose of the signing.  Trial Court Opinion, 12/19/13, at 9.  Finally, the trial court incorrectly penalizes Bricker for failing to explain why she signed the forms on August

18, 2004, *id.* at 9 n.4, when that burden should have properly been assigned to State Farm Mutual. **Madison**, 735 A.2d at 106.

Summary judgment is only appropriate where all inferences are construed in favor of the non-moving party and there exists no issue of material fact. **Karoly**, 65 A.3d at 309. Here, the trial court made inferences in favor of State Farm Mutual, and there existed unresolved issues of material fact relating to the circumstances of the August 18, 2004, signing, and to which policy the UIM form referred. As such, the trial court erred in granting summary judgment in favor of State Farm Mutual.

Order affirmed in part and reversed in part. Case remanded for proceedings not inconsistent with this decision. Jurisdiction relinquished.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/22/2014