IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Windsor Township              :
                                :
       v.              :   No. 592 C.D. 2021
                                :
Tompkins Financial Corporation  :
t/d/b/a VIST Bank,          :
            Appellant    :   Argued: September 15, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                    FILED:  October 18, 2022

Appellant Tompkins Financial Corporation t/d/b/a VIST Bank (VIST) appeals from the Court of Common Pleas of Berks County's (Common Pleas) May 3, 2021 order, through which Common Pleas denied VIST's Motion for Judgment on the Pleadings (Motion) and granted Appellee Windsor Township's (Township) Cross-Motion for Judgment on the Pleadings (Cross-Motion). In doing so, Common Pleas directed VIST to honor a copy of a letter of credit (Letter) provided by the Township and, as a result, to disburse funds to the Township that were secured by that Letter. We reverse and remand.

## I. Background

The relevant facts are as follows. In July 2004, Greth Development Group, Inc., (Greth) filed a subdivision plan with the Township, through which it sought permission to build 48 townhouses on a roughly 8.5-acre plot of land in the Township (Property), for what would ultimately be known as the "Towns at Kaercher Creek." Compl. ¶¶3-4; Reproduced Record (R.R.) at 4a-5a. In July 2006,

the Township gave final approval to Greth's plan and, in September 2006, the two entities signed a document titled "Towns at Kaercher Creek Subdivision Improvements Agreement" (Agreement), through which Greth agreed to take a number of steps in order to move forward with constructing this development. Compl. ¶¶5-6; R.R. at 5a. Included in this Agreement were two requirements that are of relevance to this matter. The first obligated Greth to complete all mandated improvements for the development within one year. Compl. ¶7, Ex. C ¶4; R.R. at 5a, 14a. The second obligated Greth to obtain a letter of credit that covered the full estimated cost for the development's improvement, which the Township would be authorized to draw upon in the event that Greth defaulted on the Agreement. *See* Compl. ¶12, Ex. C ¶6; R.R. at 6a, 15a.[1]

Greth satisfied the second requirement by securing the Letter from Leesport Bank (Leesport), VIST's predecessor. Compl. ¶12, Ex. F; R.R. at 6a, 28a-29a; VIST's Answer with New Matter ¶17.[2] By its express terms, the Letter, and the Township's ability to draw thereon, were subject to the following conditions:

> 1. This Letter shall be valid until the expiration date of September 28, 2007, and shall thereafter be automatically extended for successive one-year periods from the present or any future expiration date, unless at least thirty (30) days prior to any such expiration date [Leesport notifies the Township] in writing . . . , that [Leesport] elect[s] not to so extend this Letter. Upon receipt by [the Township] of such notice [the Township] may draw hereunder by [the

---

[1] The letter of credit was required to "have an expiration date of at least one year from the date of [the] Agreement[.]" Compl., Ex. C ¶6; R.R. at 15a.

[2] All citations to and discussion of the Letter's substance refer to the version in this matter's record, which is conspicuously stamped "COPY." *See* R.R. at 28a. VIST both disputes the assertion that the document provided by the Township is an exact copy of the original Letter and, in addition, maintains that it is immaterial whether it was, in fact, an exact copy. *See* VIST's Br. at 13 n.5.

2

Township's] draft at sight on [Leesport], accompanied by [an] Affidavit [that Greth has defaulted on the Agreement] and [a] Statement [that Greth is still liable for its obligations under the Agreement].

2. This Letter will be honored upon presentation of drafts drawn hereunder when accompanied by the aforementioned Affidavit and Statement, if presented to [Leesport] at [its] office at 1240 Broadcasting Road, PO Box 6219, Wyomissing, PA 19610, on or before the [Letter's] expiration date.

3. All such drafts drawn under this Letter must be marked "Drawn under Leesport Bank, Letter of Credit No. 111."

4. *The original Letter and all amendments, if any, shall be presented at the time of any drawings*. Multiple drawings are permitted hereunder.

5. Except so far as otherwise expressly stated herein, this Letter . . . is subject to the "Uniform Customs and Practices for Documentary Credits (1993 Revision), International Chamber of Commerce Publication No. 500" ("UCP"), and to the Uniform Commercial Code of Pennsylvania, 13 P.S. [§] 5101 *et seq.*[3] ("UCC"), and as otherwise interpreted, under Pennsylvania [l]aw. To the extent, if any, that there is a conflict of provisions between the applicable sections of the UCP and the UCC, the provisions of the UCP shall prevail.

Any drafts drawn under and in compliance with the terms and conditions of this Letter will be duly honored by [Leesport] on presentation of documents as specified if presented on or before the [Letter's] expiration date.

R.R. at 28a-29a (emphasis added).

Greth, however, did not fulfill its obligations under the first requirement, in that it failed to complete all of the development's required improvements within twelve months of entering into the Agreement with the Township. Compl. ¶¶8-9; R.R. at 5a-6a. Years passed without any apparent action, until the Township

---

[3] This is undoubtedly a scrivener's error, as this portion of the UCC is codified as 13 Pa. C.S. §§ 5101-5118, rather than in Purdon's Pennsylvania Statutes.

eventually sued both Greth and Kazzoe, LLC, Greth's successor-in-interest.[4] *See* R.R. at 30a; VIST's Br. at 19 n.7. Separately, on October 18, 2019, the Township sent a demand to VIST, through which it requested that VIST honor the Letter and provide the Township with sufficient capital to finish those improvements. Compl. ¶13, Ex. G; R.R. at 7a, 30a-31a.[5] VIST declined to do so and, on July 9, 2020, in an effort to vindicate its right to draw funds under the Letter, the Township filed suit against VIST. Compl. ¶¶14-15; R.R. at 7a.

VIST answered the Township's Complaint and followed on February 16, 2021, with its Motion. VIST argued in the Motion that it was entitled to judgment on the pleadings in its favor because, per the Letter's terms, the Township could only draw upon the underlying funds if it presented VIST with the *original* Letter itself, but, by its own admission, the Township was no longer in possession of the original and had only presented VIST with a copy thereof. Motion ¶¶3-45; R.R. at 50a-58a. On March 8, 2021, the Township responded in opposition to the Motion and, in addition, submitted its Cross-Motion. In the Cross-Motion, the Township admitted that it had "misplaced" the original Letter, but argued that it was allowed to present VIST with an exact copy, as it had already done, in order to draw upon the money secured by that Letter. Cross-Motion ¶¶46-52; R.R. at 86a-88a.

Common Pleas then held oral argument regarding both motions on April 13, 2021, and, on May 3, 2021, issued an order through which it denied VIST's Motion and granted the Township's Cross-Motion. VIST responded by appealing Common

---

[4] Greth conveyed portions of the Property to Kazzoe, LLC, in 2013. Compl. ¶11, Ex. E; R.R. at 6a. The Township subsequently sued both Greth and Kazzoe, LLC for breaching the Agreement's terms. *See* R.R. at 30a; VIST's Br. at 19 n.7.

[5] The Township claims that it repeatedly notified VIST of its desire to draw on the Letter, but the record does not specifically point to when those other alleged communications occurred. *See* Compl. ¶13, Ex. G; R.R. at 7a, 30a.

Pleas' adjudication to our Court. Thereafter, Common Pleas released an opinion on September 7, 2021, through which it took the position that the Township was not required to strictly comply with the Letter's terms and, instead, that the Township's presentation of an exact copy of the Letter, rather than the admittedly misplaced original, was both permissible and entitled the Township to payment thereon by VIST. Common Pleas Op., 9/7/21, at 3-5; R.R. at 179a-81a.

## II. Discussion

On appeal, VIST presents two arguments that we summarize as follows. First, Common Pleas erred by both denying VIST's Motion and granting the Township's Cross-Motion, as, in deeming it permissible for the Township to present a copy of the Letter in the original's stead, Common Pleas improperly disregarded the UCC's strict compliance requirement and, instead, wrongly applied precepts from contract law. VIST's Br. at 15-32. Second, in the alternative, Common Pleas has yet to rule upon the vast majority of affirmative defenses raised by VIST in its Answer with New Matter and, consequently, Common Pleas' decision to grant judgment on the pleadings in the Township's favor was premature at best. *Id.* at 32-35.

> A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. *Hammerstein v. Lindsay, M.D.,* . . . 655 A.2d 597, 600 ([Pa. Super.] 1995). In reviewing [a] trial court's decision to grant judgment on the pleadings, the scope of review of [an] appellate court is plenary; [the] reviewing court must determine if the action of [the] trial court was based on clear error of law or whether there were facts disclosed by pleadings which should properly go to the jury. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. *Id.* at 600-601.

5

> In conducting its inquiry, [a] court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. Only when the moving party's case is so clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a [lower court's ruling on a] motion for judgment on the pleadings. *Id.* at 601.

*Newberry Twp. v. Stambaugh*, 848 A.2d 173, 175 n.1 (Pa. Cmwlth. 2004).

In this situation, it is undisputed that the Letter expressly mandated that the Township had to present the *original* Letter to VIST (as Leesport's successor entity) in order to draw upon the underlying funds, as well as that the Township instead offered up what is purported to be an exact copy of that Letter. Thus, the salient question before us is whether the Township's failure to provide VIST with the original Letter prevents it from compelling VIST to disburse any monies. We hold that it does.

By its own terms, the Letter is a letter of credit that is governed by both Article 5 of the UCC, which, as already noted, is codified in Pennsylvania as 13 Pa. C.S. §§ 5101-5118, and by the "Uniform Customs and Practices for Documentary Credits (1993 Revision), International Chamber of Commerce Publication No. 500[,]" otherwise known as the UCP. *See* R.R. at 28a-29a.[6] As has been explained by the Superior Court,

---

[6] Section 5102 of the UCC defines "letter of credit" as "[a] definite undertaking that satisfies the requirements of [S]ection 5104 [of the UCC, 13 Pa. C.S. § 5104,] (relating to formal requirements) by an issuer to a beneficiary at the request or for the account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value." 13 Pa. C.S. § 5102. In turn, Section 5104 states that "[a] letter of credit . . . may be issued in any form that is a record and is authenticated: (1) by a signature; or (2) in accordance with the agreement of the parties or the standard practice referred to in section 5108(e) [of the UCC, 13 Pa. C.S. 5108(e), (relating to standard practice). 13 Pa. C.S. § 5104. With regard to "standard practice," Section 5108(e) mandates that "[a]n issuer shall observe standard practice of financial institutions that regularly issue letters of credit." 13 Pa. C.S. § 5108(e).

6

a letter of credit is "[a]n engagement by a bank or other person made at the request of a customer and of a kind ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." 13 Pa. C.S. § 5103(a). Thus, a transaction involving a letter of credit encompasses at least three distinct agreements: 1) the underlying contract between the customer and the beneficiary, the person entitled to demand payment; 2) the contract between the bank and its customer relating to both the issuance of the letter of credit and the reimbursement of the bank upon honoring a demand for payment; and 3) the letter of credit obligating the bank to pay the beneficiary. *See Sound of Mkt. St. v. Continental Bank Int'l*, 819 F.2d 384 (3d Cir.1987) (applying Pennsylvania law).

Moreover, the primary purpose of a letter of credit is to provide the assurance of prompt payment upon the presentation of documents. *See Intraworld Indus. v. Girard Trust Bank*, . . . 336 A.2d 316 (Pa. 1975). The issuing bank's obligation under the letter of credit is independent from the other agreements and arises only upon the presentation of documents which conform to the requirements of the letter of credit. *See* [*id.*] (issuer deals only in documents and must honor demand for payment if documents conform with letter of credit); *Sound of Mkt. St. v. Continental Bank Int'l*, *supra*, 819 F.2d 384 (the three agreements created by letter of credit transaction remain distinct); *Five Star Parking v. Phila. Parking Auth.,* 703 F.Supp. 20 (E.D.Pa.1989) (obligation under letter of credit separate and distinct from any contract or course of dealing between bank's customer and beneficiary of letter of credit; issuer charged only with reviewing documents to determine if they conform with the requirements of the letter of credit).

*Samuel Rappaport Fam. P'ship v. Meridian Bank*, 657 A.2d 17, 21 (Pa. Super. 1995);[7] *accord Mun. Auth. of Hazle Twp. v. First Liberty Bank & Tr.*, (Pa. Cmwlth.

---

[7] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

No. 211 C.D. 2008, filed Jan. 2, 2009), slip op. at 9-17, 2009 WL 9096534, at *5-*9.[8] Per Section 5108(a) of the UCC,

> [e]xcept as otherwise provided in [S]ection 5109 [of the UCC] (relating to fraud and forgery), an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection (e), appears on its face strictly to comply with the terms and conditions of the letter of credit. *Except as otherwise provided in [S]ection 5113 [of the UCC] (relating to transfer by operation of law) and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear so to comply.*

13 Pa. C.S. § 5108(a) (emphasis added). In short, the watchword for letters of credit, and the duties they create, is strict compliance.

> [E]ssential to the viability of this device is the certainty that it provides. Just as the beneficiary is induced to enter the underlying transaction because it is assured payment under specific terms agreeable to it, so too the bank assumes a primary obligation in part because its commitment is clearly defined within the four corners of the letter. If courts deviate from the rule of strict compliance and insist in certain undefined situations that banks make payments notwithstanding the fact that the beneficiary failed to comply with the terms stipulated in the letter of credit, the certainty that makes this device so attractive and useful may well be undermined, with the result that banks may become reluctant to assume the additional risks of litigation.

*Ins. Co. of N. Am. v. Heritage Bank, N.A.*, 595 F.2d 171, 176 (3d Cir. 1979).[9]

Furthermore, and in keeping with this strict compliance standard, the fundamental

---

[8] Unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value. *See* Internal Operating Procedures of the Commonwealth Court Section 414(a), 210 Pa. Code § 69.414(a).

[9] Though we are not bound to follow decisions issued by inferior federal courts as binding precedent, we may nevertheless consider them where relevant as persuasive authority. *See Upper Gwynedd Towamencin Mun. Auth. v. Dep't of Env't Prot.*, 9 A.3d 255, 259 n.4 (Pa. Cmwlth. 2010).

nature of letters of credit renders them distinct from normal contractual agreements and it is the rule, rather than the exception, that such letters largely stand beyond the reach of contract law.

> Generally, under the [UCC], the law of contracts may be utilized to supplement the law relating to letters of credit as long as it does not interfere with the unique nature of letters of credit. . . . Consequently, rules of contract interpretation which are not inconsistent with the nature of letters of credit may be utilized to examine the terms of a letter of credit, determine whether they are ambiguous, and resolve any perceived ambiguity.

*Rappaport*, 657 A.2d at 21 (citation omitted).

In this instance, paragraph four of the Letter expressly establishes that "[t]he original Letter and all amendments, if any, shall be presented at the time of any drawings." R.R. at 29a. This requirement, which was imposed upon the Township by virtue of the Letter's plain and unambiguous language, obligates the Township to submit the original Letter to VIST in order to draw upon the funds secured thereby. *Id.* Therefore, the Township could neither avail itself of contract law's more relaxed dictates in this instance, nor present a copy of the Letter to VIST in the original's stead, and Common Pleas erred by concluding otherwise.[10] *See Grunwald*

---

[10] In doing so, Common Pleas improperly relied upon two Superior Court cases, and one from the United States Court of Appeals for the First Circuit. The Superior Court cases, *Bobby D. Associates v. Dimarcantonio*, 751 A.2d 673 (Pa. Super. 2000), and *Hera v. McCormick*, 625 A.2d 682 (Pa.Super. 1993), respectively addressed situations involving a lost promissory note and the validity of an *inter vivos* gift, but had nothing to do with letters of credit or their unique characteristics. As for *Flagship Cruises, Ltd. v. New England Merchants National Bank of Boston*, the First Circuit's reasoning in that matter is highly questionable, as it disregards the nature of letters of credit by using a substantial compliance rule, rather than the proper, aforementioned strict compliance standard. 569 F.2d 699, 705 (1st Cir. 1978); *see Ins. Co. of N. Am.*, 595 F.2d at 175 (cleaned up and footnotes omitted) ("We are aware that some authorities have taken the position that the rule of strict compliance ought to be tempered to some extent.[] This Court, however, has already cast its lot with the majority who fear that the sacred cow of equity may trample the tender **(Footnote continued on next page…)**

9

*v. Wells Fargo Bank, N.A.*, 725 N.W.2d 324, 329 (Iowa Ct. App. 2005); *Bisker v. NationsBank, N.A.*, 686 A.2d 561, 566-67 (D.C. 1996); *Airlines Reporting Corp. v. Norwest Bank, N.A.*, 529 N.W.2d 449, 451 (Minn. Ct. App. 1995); *Brul v. MidAmerican Bank & Tr. Co.*, 820 F. Supp. 1311, 1312-15 (D. Kan. 1993).[11]

Nor does the UCP compel a different conclusion. Per Article 20(b) of the UCP, "[*u*]*nless otherwise stipulated in the* [*letter of c*]*redit*, banks will also accept as an original document(s), a document(s) produced or appearing to have been produced: (i) by reprographic, automated or computerized systems; [or] (ii) as carbon copies; provided that it is marked as original and, where necessary, appears to be signed." UCP, art. 20(b) (emphasis added). Here, the Letter expressly establishes that the Township is required to submit the original Letter and cannot draw upon the monies secured thereby without it. *See* R.R. at 29a. Thus, even under the UCP, the Township would not be allowed to substitute a copy of the Letter for the original.[12]

---

vines of letter-of-credit law[] and therefore maintain that there is no room for documents which are almost the same, or which will do just as well."). Furthermore, it bears mentioning that the beneficiary in *Flagship Cruises* presented the original letter of credit when it demanded payment thereon and that the salient issue in that matter was whether that demand had been made in a timely manner. *See* 569 F.2d at 701-02. *Flagship Cruises* is thus both of dubious value from an analytical standpoint and distinguishable on the facts.

[11] "While it is a truism that decisions [issued by] sister states[' courts] are not binding precedent on [the courts of our Commonwealth], they may be persuasive authority . . . and are entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme like that contemplated by the [UCC]." *Com. v. Nat'l Bank & Tr. Co. of Cent. Pa.*, 364 A.2d 1331, 1335 (Pa. 1976) (internal citations omitted).

[12] In its brief, the Township presents arguments that rely in part upon a policy statement that was published in 1999 by the International Chamber of Commerce, *i.e.*, the entity that authored the UCP, which is titled, "The determination of an 'Original' document in the context of UCP 500 sub-Article 20(b))" (Policy Statement). *See* Township's Br. at 12-15. The Township claims that
**(Footnote continued on next page…)**

this Policy Statement, which is only included as an exhibit to an *amicus curiae* brief submitted to this Court, supports the Township's position that a copy of the Letter is, in effect, just as valid as the original. *See id.*; Amicus Curiae Br., Ex. A. As the Policy Statement was neither attached to nor incorporated by reference in any of this matter's pleadings, it cannot serve as a basis for justifying Common Pleas' rulings upon the Motion and Cross-Motion, nor are we permitted to rely upon the Policy Statement in the context of adjudicating this appeal. *Newberry Twp.*, 848 A.2d at 175 n.1; *see McCaffrey v. Pittsburgh Athletic Ass'n*, 293 A.2d 51, 57 (Pa. 1972) ("[I]t is black letter law that an appellate court cannot consider anything which is not a part of the record in the case.").

Furthermore, even if this Policy Statement had been actually or effectively included in this matter's pleadings, it would not enable the Township's position to carry the day. Therein, the International Chamber of Commerce explained in relevant part that Article 20(b) of the UCP should be interpreted in the following manner:

### 3. Correct interpretation of sub-article 20(b)

**General approach**

Banks examine documents presented under a letter of credit to determine, among other things, whether on their face they appear to be original. Banks treat as original any document bearing an apparently original signature, mark, stamp, or label of the issuer of the document, unless the document itself indicates that it is not original. Accordingly, unless a document indicates otherwise, it is treated as original if it:

(A) appears to be written, typed, perforated, or stamped by the document issuer's hand; or

(B) appears to be on the document issuer's original stationary; or

(C) states that it is original, unless the statement appears not to apply to the document presented (e.g., because it appears to be a photocopy of another document and the statement of originality appears to apply to that other document).

. . . .

**Photocopies**

Banks treat as non-original any document that appears to be a photocopy of another document. If, however, a photocopy appears to have been completed by the document issuer's hand marking the photocopy, then, consistent with subparagraph (A) above, the resulting document is treated as an original document unless it indicates otherwise.

**(Footnote continued on next page…)**

11

### III. Conclusion

In light of the foregoing, we hold that there are no genuine issues of material fact on the face of the pleadings that: (1) the Letter unambiguously conditioned the Township's ability to draw upon the funds secured thereby upon the Township presenting the original Letter; (2) the Township admittedly misplaced the original Letter and only submitted a copy to VIST when it requested those funds; and (3) neither the UCC nor the UCP allowed the Township to offer that copy instead of the original. Accordingly, Common Pleas erred by both denying VIST's Motion and granting the Township's Cross-Motion. Therefore, we reverse Common Pleas' May

---

. . . .

**Statements indicating non-originality**

A statement in a document that it is a true copy of another document or that another document is the sole original indicates that it is not original. A statement that it is the "customer's copy" or "shipper's copy" neither disclaims nor affirms its originality.

**4. What is not an "Original"?**

A document indicates that it is not an original if it

- appears to be produced on a telefax machine;

- appears to be a photocopy of another document which has not otherwise been completed by hand marking the photocopy or by photocopying it on what appears to be original stationary; or

- states in the document that it is a true copy of another document or that another document is the sole original.

Amicus Curiae Br., Ex. A. As the iteration of the Letter that was provided by the Township is conspicuously stamped "COPY," the Policy Statement would not justify treating it as if it was the "original" under Article 20(b) of the UCP.

12

3, 2021 order and remand to the lower court, with instructions that it enter judgment on the Motion in VIST's favor.[13]

_____
ELLEN CEISLER, Judge

---

[13] We need not address VIST's remaining argument, due to our disposition of this appeal.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Windsor Township | : | |
| | : | |
| v. | : | No. 592 C.D. 2021 |
| | : | |
| Tompkins Financial Corporation | : | |
| t/d/b/a VIST Bank, | : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 18th day of October, 2022, it is hereby ORDERED that the Court of Common Pleas of Berks County's (Common Pleas) May 3, 2021 order, through which Common Pleas denied Appellant Tompkins Financial Corporation t/d/b/a VIST Bank's (VIST) Motion for Judgment on the Pleadings (Motion) and granted Appellee Windsor Township's Cross-Motion for Judgment on the Pleadings, is REVERSED. It is FURTHER ORDERED that this matter is REMANDED to Common Pleas, with instructions that it enter judgment on the Motion in VIST's favor.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge