J-A05044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| KENNETH P. LAUGHLIN AND JOYCE L. LAUGHLIN, HUSBAND AND WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellees | |
| v. | |
| RAYMOND A. SCHNUR | |
| Appellant | No. 1337 WDA 2016 |

Appeal from the Judgment Entered September 9, 2016
In the Court of Common Pleas of Butler County
Civil Division at No(s): A.D. No. 2014-10958

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MOULTON, J.

MEMORANDUM BY MOULTON, J.:                    **FILED JULY 25, 2017**

Raymond A. Schnur appeals from the September 9, 2016 judgment entered in favor of Kenneth P. Laughlin and Joyce L. Laughlin ("the Laughlins") by the Butler County Court of Common Pleas.  We affirm.

The trial court summarized the relevant history of this matter as follows:

> [The Laughlins] commenced the present action by filing a Complaint in Equity, requesting permanent injunctive relief against [Schnur].  [The Laughlins] assert that [Schnur] has placed a split rail fence along the northern edge of a right-of-way, located along the southern boundary of the [Laughins]' property, which has obstructed [the Laughlins]' full use of said right-of-way.  [The Laughlins] seek an order directing [Schnur] to remove the fence from the right-of-way, and that restrains and enjoins [Schnur] from erecting any other obstruction along said right-of-way, where the same borders the [Laughlins]' property.

Background, Findings of Fact, Discussion, Conclusions of Law, and Decision, 6/21/16, at 1-2 ("Trial Ct. Op."). The trial court also made findings of fact, which are supported by the record and which we adopt and incorporate herein. *See id.* at 2-4.

On April 25, 2016, the case proceeded to a non-jury trial. On June 21, 2016, the trial court entered an order granting a permanent injunction in favor of the Laughlins and issued an accompanying opinion. The trial court ordered Schnur to remove the fence and "further enjoined [Schnur] from erecting any other obstruction, which interferes with the [Laughlins]' access to their property from the 50 foot right-of-way, along the southern line of the [Laughlins]' property." Trial Ct. Op. at 18.

On June 30, 2016, Schnur filed a motion for post-trial relief, which the trial court denied on August 11, 2016. On September 9, 2016, the Butler County Prothonotary entered judgment. Schnur filed a timely notice of appeal.

Schnur raises the following issues on appeal:

> I. Did the Lower Court err in holding that the Easement at issue entitled [the Laughlins] to unfettered access from any desired point along [Schnur]'s Property, and that such access would not increase the burden to the servient tenement?
>
> II. Did the Court err in holding that [the Laughlins] did not have sufficient access to and from their property and Eagle Mill Road in a manner consistent with the language of the deeds and chains of title of each of the properties here involved, and that the split-rail fence at issue constituted a

substantial interference with [the Laughlins]' right of access to and from Eagle Mill Road and their Property?

III. Did the Lower Court err in granting an injunction requiring the removal of the entire length of [Schnur]'s fence, which was not a narrowly tailored remedy to abate the alleged injury as required?

Schnur's Br. at 4 (answers below omitted).

"[W]hen reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." **Buffalo Township v. Jones**, 813 A.2d 659, 663-64 (Pa. 2002); **see also WellSpan Health v. Bayliss**, 869 A.2d 990, 995-96 (Pa.Super. 2005).

The trial court found that: the Laughlins' had an express easement that gave them the right to access their property, from the 50 foot right-of-way, at any point or points along the southern line of their property; Schnur's construction of the split rail fence substantially interferes with the Laughlins' use of the easement; and injunctive relief is an appropriate remedy for permanent, substantial interference with the use of an easement by the easement owner. After our review of the certified record, the parties' briefs, and the relevant law, we conclude the trial court did not err in granting the Laughlins' request for a permanent injunction. We agree with the analysis set forth in the trial court's opinion, which we adopt and incorporate herein. **See** Trial Ct. Op. at 4-17.

Judgment affirmed.

J-A05044-17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/25/2017

- 4 -

## IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

KENNETH P. LAUGHLIN and
JOYCE L. LAUGHLIN, husband and wife,

      Plaintiffs,

  v.

RAYMOND A. SCHNUR ,

      Defendant.

AD No. 2014-10958

Attorney for Plaintiff:      David A. Crissman

Attorney for Defendant:      Rebecca L. Black

HORAN, J.      DATE: 6/20/2016

## BACKGROUND, FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND DECISION

AND NOW, the above matter having come before this Court for non-jury trial on April 25, 2016, the Court enters the following Background, Findings of Fact, Discussion, Conclusions of Law, and Decision:

### BACKGROUND

Plaintiffs, Kenneth P. Laughlin and Joyce L. Laughlin, commenced the present action by filing a Complaint in Equity, requesting permanent injunctive relief against the Defendant, Raymond A. Schnur. Plaintiffs assert that the Defendant has placed a split rail fence along the northern edge of a right-of-way, located along the southern boundary of the Plaintiffs' property,

1

which has obstructed Plaintiffs' full use of said right-of-way. Plaintiffs seek an order directing Defendant to remove the fence from the right-of-way, and that restrains and enjoins the Defendant from erecting any other obstruction along said right-of-way, where the same borders the Plaintiffs' property.

## FINDINGS OF FACT

1. The Stipulated Facts are incorporated herein as though the same were set forth fully herein. (Joint Ex. 1.)

2. The Plaintiffs live on and farm their property, which has 348.59 feet of frontage along the northern edge of the right-of-way, which is the boundary line between the Plaintiffs' and the Defendant's properties.

3. The Defendant left an opening in his split rail fence, at the site of the Plaintiffs' driveway; however the fence blocks an alternate access to the Plaintiffs' property.

4. The alternate access leads to Plaintiffs' property and to an opening through a wooded area on the Plaintiffs' property.

5. The alternate access had been a point of entry into what is now the Plaintiffs' property before the creation of the driveway by Beth Morrow (now Bodine), the Plaintiffs' immediate predecessor in title.

6. Beth Morrow (now Bodine) and her family continued to use the alternate access even after her driveway was established. She and/or others would "make a loop," by entering her property at one point and exiting at another, particularly when pulling a trailer or operating a piece of farm equipment.

7. The Plaintiffs, their family and their invitees continued to use the alternate access to enter and exit the Plaintiffs' property along their southern property line. They primarily used the alternate access when pulling their camper or a livestock trailer, or transporting farm equipment.

8. Before Defendant began running the fence back the right-of-way, Plaintiff, Kenneth Laughlin, approached him to inquire where he was going with the fence. Defendant informed that he was planning to run the fence back the right-of-way along Defendant's property line. Plaintiff requested that both the driveway access and the alternate access be kept open.

2

9. Plaintiffs met with Defendant and his wife at Defendant's home and requested that Defendant leave openings for Plaintiffs' driveway and for the alternate access.

10. From the Defendant's comments, the Plaintiffs believed that the Defendant had agreed to leave an opening for both the driveway and the alternate access.

11. Plaintiff, Joyce Laughlin, helped the Defendant erect the fence from the western edge of Plaintiffs' driveway to the eastern edge of their alternate access.

12. When they reached the point of the alternate access, the Defendant stopped construction for a lunch break. Plaintiff, Joyce Laughlin, left the site at the time, believing that the Defendant would leave an opening in the fence for the alternate access.

13. Later that day, the Defendant built the fence across the alternate access.

14. Immediately after the Defendant erected the fence, Plaintiffs personally and through legal counsel made several requests and demands for the Defendant to remove that portion of the fence which blocked their alternate access.

15. The Defendant has refused to remove the fence, or that portion of the fence, which blocks the Plaintiffs' alternate access.

16. The Defendant placed the fence along the right-of-way for aesthetic reasons and to frame his property.

17. The placement of the fence along the right-of-way limits the Plaintiffs' access to their property, from the right-of-way, to a single location, i.e. their driveway.

18. Before the Defendant erected the fence, there had never been any impediment or restriction to the Plaintiffs' or their predecessors' use of the right-of-way to access their property from any point along the Plaintiffs' southern property line.

19. The Defendant's property will not be impressed with a greater burden by the Plaintiffs' use of the right-of-way at the alternate access or at other points along the Plaintiffs' southern property line.

20. Both the Defendant's and the Plaintiffs' properties derive from Alma Dunn Beahm's subdivision of a larger parcel, and said larger parcel comprised the Dunn farm.

3

3

21. The 50 foot right-of-way, presently at issue, was once used as a farm lane, and it provided free access for farm equipment and vehicles between the various fields for those who lived and worked on the farm.

22. The Dunn family and others used the farm lane and freely accessed, what is now the Plaintiffs' property, at multiple points, along the lane.

23. After the 50 foot right-of-way was formally established, Alma Dunn Beahm, as part of a subdivision plan, conveyed a ten acre parcel, located along the northern boundary of the right-of-way, to her daughter and son-in-law, Beth Martha Morrow (now Bodine) and Thomas Alan Morrow, the Plaintiffs' predecessors in title.

24. Said ten acre parcel was the first to be conveyed pursuant to Ms. Dunn Beahm's subdivision plan, and was conveyed along with an express grant of right-of-way.

25. At the time of the express grant to the Plaintiffs' predecessors in title, there was no fence or other obstacle in place to restrict Plaintiffs' predecessors in title from accessing their property, from the 50 foot right-of-way, at any point along their southern property line.

26. The alternate access, which was clear and flat, served as an access point to Beth's property for farm equipment and vehicles, prior to Beth's installation of a driveway, as well as after.

## DISCUSSION

The issues currently before the Court include the scope of easement rights granted to the Plaintiffs, and whether the Defendant interfered with said easement rights when he constructed a split rail fence along the Plaintiffs' southern property line and in common with and along the northern edge of a 50 foot right-of-way. Also at issue is whether the Plaintiffs are entitled to the injunctive relief they have requested.

In *Buffalo Twp. v. Jones*, 813 A.2d 659 (Pa. 2002), the Supreme Court of Pennsylvania described the requirements for a permanent injunction:

> . . . in order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. However, unlike a claim for a preliminary

4

injunction, the party need not establish either irreparable harm or immediate relief and a court 'may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law.'

813 A.2d at 663 (internal citation omitted) (quoting *Soja v. Factoryville Sportsmen's Club*, 522 A.2d 1129, 1131 (Pa. Super. 1987)). Interference with an easement owner's use of their easement is a legal wrong for which an action in equity seeking injunctive relief is appropriate. *See Trimble Services v. Franchise Royalty Interstate Corp.*, 285 A. 2d 113, 117 (Pa. 1971). "Even where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury." *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137, 1144-45 (Pa.Cmwlth. Ct. 2008) (citing *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1167 (Pa. 1977)).

"In Pennsylvania, each party to an easement 'has a right to insist that the terms of the agreement be complied with, and that, so long as the easement is enjoyed, it shall remain substantially as it was at the time the right accrued, regardless of whether benefit or damage will result from a proposed change.'" *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 766 (3d Cir. 1994) (quoting *Piro v. Shipley*, 60 A. 325, 329 (Pa. 1905)). "The owner of the servient soil has the right to make use of his property as he chooses, if, by so doing, he does not substantially interfere with the easement." *Mercantile Library Co. of Philadelphia v. Fid. Trust Co.*, 83 A. 592, 595 (Pa. 1912). Thus, in order to establish a clear right to relief in the present case, the Plaintiffs must establish what rights the easement at issue grants to them, and that the Defendant's fence constitutes a substantial interference with those rights.

5

The Defendant argues that the easement in question is an express easement, and that the clear language of the grant of said easement limits Plaintiffs' use to the purpose for which it was created, i.e. reasonable means of ingress, egress and regress to and from Eagle Mill Road. Defendant argues that Plaintiffs' driveway achieves this purpose; and further argues that Defendant's construction of the fence, which blocks the alternate access, is reasonable because it does not substantially interfere with Plaintiffs' use of the easement. Plaintiffs assert that the right-of-way at issue is an expressly created easement appurtenant to the Plaintiffs' property, and that it is a right that they enjoy, despite the fact that their deed does not specifically mention the same (except to reference it as the southerly boundary line of Plaintiffs' property). Plaintiffs argue that the language of the express grant of easement in this case gives Plaintiffs the right of unfettered access to their property, along their southern property line, where the same borders the right-of-way.

The right-of-way at issue was created by express grant in the deed from Alma Dunn Beahm and Clifford E. Beahm to Beth Martha Morrow and Thomas Alan Morrow, on November 6, 1984. Beth Martha Morrow and Thomas Alan Morrow are the Plaintiffs' predecessors in title. Said deed to the Morrows expressly provides, in relevant part, that the conveyance of property was: "TOGETHER with the right of egress, regress and ingress of a 50 foot private right of way from Eagle Mill Road also known as Route T-354 in a generally Westerly direction through other lands of parties of the first part and along the Southerly line of lands hereinabove described." (Joint Exhibit No. 4.) In addition, the recorded subdivision plan, made by Alma Dunn Beahm, created and defined the right-of-way at issue in this case. By virtue of this express

6

grant, Defendant's predecessor's land was made the servient tenement impressed with a permanent easement of passage over and along the right-of-way. The Plaintiffs' property became the dominant estate, benefitting from the right-of-way. The right-of-way language is contained in the Plaintiffs' predecessors' deed and within the subdivision plan. (Joint Exhibit 16.) Plaintiffs' deed also expressly conveys the property "with the appurtenances." Further, the Defendant was aware that he was taking his property subject to this right-of-way/easement, as his deed and other deeds in his chain of title, and language upon the recorded Plans, specifically reference said right-of-way/easement. The same has also been visually apparent upon the property. Thus, the subject right-of-way/easement is an expressly granted easement appurtenant to the Plaintiffs' property.

As regards the Plaintiffs' entitlement to the benefit of such express grant of right-of-way, "[a] right of way is an easement which may be created by an *express* grant . . . ." *Merrill v. Manufacturers Light & Heat Co.*, 185 A.2d 573, 575 (Pa. 1962) (emphasis in original). The Supreme Court of Pennsylvania, in *Brady v. Yodanza*, 425 A.2d 726 (1981), held that "where an easement is annexed as an appurtenance to land by an express or implied grant or reservation . . . it passes with a transfer of the land although not specifically mentioned in the instrument of transfer." 425 A.2d at 728. As such, the Plaintiffs are entitled to the "right of egress, regress and ingress of a 50 foot private right of way from Eagle Mill Road also known as Route T-354 in a generally Westerly direction through other lands of parties of the first part and along the Southerly line of lands hereinabove described." (Joint Exhibit 4.) Having determined that the

7

easement in question is an express easement, the issue turns to the scope of the Plaintiffs' easement rights.

In *McNaughton Properties, LP v. Barr*, 981 A.2d 222, 227 (Pa. Super. 2009), the Superior Court of Pennsylvania described the law with respect to construction of the scope of express easements:

> [I]t is well established that the same rules of construction that apply to contracts are applicable in the construction of express easements . . . In ascertaining the scope of the easements, the intention of the parties must be advanced. Such intention [of the parties] is determined by a fair interpretation and construction of the grant and may be shown by the words employed or construed with reference to the attending circumstances known to the parties at the time the grant was made.

(quoting *Zettlemoyer v. Transcontinental Gas Pipline Co.*, 657 A. 2d 920, 924 (Pa. 1995)). "As with any contract the rights conferred by the grant of an express easement must be ascertained solely from the language of the deed, provided that the deed language is unambiguous." *PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 112 (Pa. Super. 2001) (citing *Dowgiel v. Reid*, 59 A.2d 115 (1948); *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385 (1986)). Further, if a grant of easement specifies the size, location and purpose of the easement, and is not ambiguous regarding any of these matters, then the use of the easement is limited to such specifications. *PARC Holdings, Inc.*, 785 A.2d at 111. The terms of a contract "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). A contract is not ambiguous for the mere fact that the parties do not agree on the proper construction. *Samuel Rappaport Family Partnership v. Meridian Bank*, 657 A.2d 17 (Pa. Super. 1995).

8

Plaintiffs argue that the language of the easement in this case grants the Plaintiffs unfettered access to their property through the right-of-way, and does not limit access to their property to a single point, i.e. their currently constructed driveway[1]. Plaintiffs claim the right to access their property, from the 50 foot private right-of-way, at any point or points along the length of their southern property line. The Defendant asserts that the language of the original grant of easement only serves to provide the Plaintiffs with the right of reasonable means of egress, regress and ingress between Plaintiff's property and Eagle Mill Road, via the 50 foot right-of-way. The Defendant further asserts that this purpose is effectively achieved through a single point of access, i.e. the Plaintiffs' driveway, which leads from Plaintiffs' property to the 50 foot right-of-way. The Defendant argues that any alternate access points are not necessary, and that the fence he constructed does not interfere with any of Plaintiffs' easement rights.

BLACK'S LAW DICTIONARY defines ingress, egress and regress as: "[T]he right of a lessee to enter, leave, and reenter the land in question." *Ingress, Egress and Regress*, BLACK'S LAW DICTIONARY (10th ed. 2014). The easement in this case grants, to the Plaintiffs, the right of egress, regress and ingress "of a 50 foot private right of way from Eagle Mill Road . . . in a generally Westerly direction through other lands of parties of the first part and *along* the Southerly line of lands hereinabove described." (Joint Exhibit 4) (emphasis added). The New International Webster's Dictionary of the English Language (1998) defines "along", as a preposition, as "[i]n the line of; through or over the length of." Thus, the language, granting the express easement in question, entitles the Plaintiffs to enter, leave, and reenter their property,

---

[1] The driveway was not in existence at the time that the right-of-way was created.

from the 50 foot right-of way, along the southern line of their property. The language of the grant of easement specifies that the purpose of the easement is egress, regress and ingress from the Plaintiffs' property to the 50 foot right-of-way, which affords access to Eagle Mill Road. The size of the easement, the length of the southern line of Plaintiffs' property, is likewise clear. The grant of easement also specifies that the easement is located along the southern line of Plaintiffs' property. There is only one reasonable interpretation of the language of the express grant when applied to the facts of the case. Plaintiffs seek to enter their property from multiple points, and Defendant's fence has blocked the Plaintiffs' alternate access, which is located along the southern line of Plaintiffs' property. Relying on only the language of the grant of express easement, which the Court finds unambiguous, the Court finds that the original grant was intended to, and did, convey the right of access, to and from the 50 foot private right-of-way, at any point or points along the length of the southern line of Plaintiffs' property, where the same borders the 50 foot private right-of-way. Thus, Plaintiffs have the right to access their property, from the 50 foot private right-of-way, at any point or points along the length of their southern property line. As such, Defendant's constructed fence, which blocks such access, interferes with Plaintiffs' use pursuant to their easement rights.

Although the Court has found the language of the express grant of easement to be unambiguous, even if the Court had found the language ambiguous, the analysis would yield the same result, as regards the Plaintiffs' rights. If the language of a grant of easement is ambiguous, the Court may resort to extrinsic circumstances, known to the parties at the time of the original grant of easement, as an aid to interpret and determine the easement rights. *See PARC Holdings,*

10

*Inc. v. Killian*, 785 A.2d 106, 112 (Pa. Super. 2001). Plaintiffs argue that the circumstances around the creation of the easement, particularly the then existing nature and use made of the property and of the surrounding property, also manifest the intent that access to and from the property was not to be limited to a single point.

Both the Defendant's and the Plaintiffs' properties were once part of the Dunn farm, and the 50 foot private right-of-way was once used as a farm lane. Harold Dunn, the son of Alma Dunn Beahm and the brother of Beth Morrow (now Bodine), provided testimony about the farm lane's use before the first conveyance from Alma Dunn Beahm to Beth Morrow. The farm lane provided machinery and vehicular access between the various farm fields. The Dunn family and others used the farm lane to freely access what is now the Plaintiffs' property at multiple points. After the 50 foot right-of-way was formally established, Alma Dunn Beahm, as part of a subdivision plan, conveyed a ten acre parcel, located along the right-of-way, to Beth Martha Morrow (now Bodine) and Thomas Alan Morrow, the Plaintiffs' predecessors in title. The parcel was the first to be conveyed pursuant to Ms. Dunn Beahm's subdivision plan, and the deed also contained the express grant of right-of-way. Said right-of-way provided access to Eagle Mill Road. At the time of the express grant, there was no fence or other obstacle in place, which would have restricted or blocked Plaintiffs' predecessors in title from accessing their property, from the 50 foot right-of-way, at any point along the southern line of lands conveyed to them. Further, Harold Dunn testified that the alternate access, which was clear and flat, served as an access point to Beth's property for farm equipment and vehicles.

11

The evidence before the Court demonstrates that, prior to the grant of express easement, access to the Plaintiffs' property was unrestricted along the farm lane. Before the Defendant constructed the fence, there had never been any barrier or restriction to limit or prevent access to Plaintiffs' property along the northern edge of the 50 foot private right-of-way. The full use of the right-of-way for unrestricted access, at the time of the grant, supports the premise that the parties to the original grant of easement intended to continue free access to the property along the length of Plaintiffs' southern property line. Further, Alma Dunn Beahm, the grantor, did not include any limiting or restricting language in the right-of-way. If the grantor had intended to limit property access to a single point, limiting language could have been included in the grant. *See Lease v. Doll*, 403 A.2d 558, 563 (Pa. 1979). Thus, the circumstances around the creation of the easement manifest the intent that access to the Plaintiffs' property, from the 50 foot right-of-way, was not meant to be limited to a single point. Further, the language that created the easement in question provides the Plaintiffs' with the "right of egress, regress and ingress of a 50 foot private right of way from Eagle Mill Road . . . *along* the Southerly line of lands hereinabove described." (Joint Exhibit 4) (emphasis added). The language of the grant of easement, when construed along with the circumstances known to the parties at the time of the grant, support the Court's conclusion that the original grant of easement was intended to, and did, convey the right of access, to and from the 50 foot private right-of-way, at any point or points along the length of the southern line of Plaintiffs' property, where the same borders the 50 foot private right-of-way. Thus, Plaintiffs have the right to access their property from the 50 foot private right-of-way at any point or points along the length of their southern property line.

12

In addition, even where "the terms of an express grant of an easement are general, ambiguous, and not defined by reference to the circumstances known to the parties at the time of the grant, the express easement is to be construed in favor of the grantee, and the easement may be used in any manner that is reasonable." *Lease v. Doll*, 403 A.2d 558, 562 (Pa. 1979) (citations omitted). Notwithstanding that the Court has found the grant of easement to be unambiguous, and that the circumstances at the time of grant support Plaintiffs' position in this case, a construction that favors the grantees, Plaintiffs' predecessors and therefore Plaintiffs, and in favor of a reasonable use also support a decision in Plaintiffs' favor. The alternate access was used to access the Plaintiffs' property before the original grant of easement. Such use also continued after the conveyance until the Defendant constructed the fence. The alternate access was consistently used by the Plaintiffs and their predecessors. Such use is a reasonable use. Thus, Plaintiffs' position, as regards the alternate access, is valid, based upon a reasonable use analysis.

Having determined that the express easement at issue grants Plaintiffs the right to access their property, from the 50 foot private right-of-way, at any point or points along the southern line of their property, the issue turns to whether Defendant's construction of the split rail fence along the northern edge of the right-of-way substantially interferes with Plaintiffs' use pursuant to this right.

In *Dyba v. Borowitz*, 7 A.2d 500, 501 (Pa. Super. 1939), the Superior Court of Pennsylvania held that:

> [A] landowner has the inherent right to erect a boundary fence along the division line of his property, and, as owner of a fee of a servient tenement over which a

13

right of way has been granted, he, unless he expressly agrees to the contrary, may make any use of his land which does not interfere substantially with the easement.

7 A.2d at 501. The right of the owner of the servient tenement to construct a boundary fence "cannot, however, be exercised ... where it is sought to completely deny the right of the user." *See Taylor v. Heffner*, 58 A.2d 450, 454 (Pa. 1948). In *Scoppa v. Myers*, 491 A.2d 148 (Pa. Super. 1985), the Superior Court of Pennsylvania held that, where the lower court had found that the plaintiffs had established that they were entitled to an easement by implication for a twenty foot right-of-way, it was error to reduce the size of the easement, where only fifteen feet were necessary to satisfy the purpose of the easement. *See also Kinzey v. Marolt*, 432 A.2d 234 (Pa. Super. 1981). Further, in *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 767 (3d Cir. 1994), the court observed that "in Pennsylvania, the fact that the purpose of an easement can be accomplished in less than the whole area dedicated to the easement does not give the servient estate the right to deny access to the unnecessary portion of the property." *Epstein* involved a defendant's plans to construct traffic control devices, which would partially limit the easement area expressly granted for ingress and egress to and from the dominant property. *Id.* at 769. The court in *Epstein* held that such limitation constituted substantial interference with the plaintiffs' rights under an express easement. *Id.* Thus, actions which obstruct an express easement owner's full use permitted under his or her easement, even if the purpose of the easement can be achieved in less than the whole area dedicated to that use, constitute substantial interference with the easement owner's rights under their easement. *Id.* In the present case, the express language of the

14

grant to Plaintiffs' predecessors provided for access along the Plaintiffs' southern property line. Thus, said right cannot be limited by the owner of the servient tenement, the Defendant.

This Court has determined that the easement at issue gives the Plaintiffs the right to access their property, from the 50 foot right-of-way, at any point or points along the southern line of their property. That access to the Plaintiffs' property can be achieved through an area smaller than that provided for in the easement does not give the Defendant the right to fence over the area granted for ingress, egress, and regress, and restrict access to only the Plaintiffs' driveway. The Defendant's split rail fence completely prevents the Plaintiffs from using their alternate access and their southern property line to achieve ingress, egress and regress to and from Eagle Mill Road. The Defendant has obstructed the full use of the easement by placing a split rail fence along the northern edge of the right-of-way and along a portion of the Plaintiffs' southern property line. Thus, the Defendant's split rail fence substantially interferes with the Plaintiffs' easement rights.

Having determined that the Plaintiffs have the right to access their property, from the 50 foot private right-of-way, at any point or points along the southern line of their property and, that the Defendant's construction of the split rail fence substantially interferes with Plaintiffs' use of their easement, the Plaintiffs' right to relief is clear. Further, substantial interference, of a permanent nature, with an easement owner's use of their easement is a legal wrong for which injunctive relief is appropriate. *See Trimble Services v. Franchise Royalty Interstate Corp.*, 285 A. 2d 113, 117 (Pa. 1971). The Defendant's fence constitutes a permanent barrier to the Plaintiffs' ability to access their property along their southern property line, which Plaintiffs have

15

the right to do under their easement. The Plaintiffs are thus entitled to a permanent injunction, enforcing their rights under the easement.

## CONCLUSIONS OF LAW

1. The Plaintiffs have the right to use this private right of way to access their property from the right-of-way to reach Eagle Mill Road pursuant to the express grant contained in the deed of their predecessors-in-title, Beth Martha Morrow (later Beth Martha Bodine) and Thomas Alan Morrow, her husband, dated November 6, 1984, and recorded at Butler County Record Book 1209, page 651, and as shown on the Alma Darlene Beahm Plan of Lots No. 2, dated September 12, 1984, and recorded at Plan Book 102, page 31, and later Plans of Lots including Plan Book 138, page 47, Plan Book 168, page 37, and Plan Book 185, page 37.

2. By virtue of said specific grant of easement, Defendant's land is the servient tenement, impressed with a permanent easement of passage over and along the right-of-way. The Plaintiffs' property is the dominant estate, benefited by the right-of-way.

3. The right-of-way/easement in question was expressly granted to the Plaintiffs' predecessor in title, and said right-of-way/easement is now enjoyed by the Plaintiffs as an expressly granted easement appurtenant. *Brady v. Yodanza*, 425 A. 2d 726 (Pa. 1981).

4. The Plaintiffs' right-of-way is an express easement, granting the Plaintiffs the "right of egress, regress and ingress of a 50 foot private right of way from Eagle Mill Road also known as Route T-354 in a generally Westerly direction through other lands of parties of the first part and along the Southerly line of lands hereinabove described."

5. The language creating the grant of express easement is not ambiguous.

6. The language granting the express easement was intended to, and did, convey the right of access, to and from the 50 foot private right-of-way, at any point or points along the southern line of Plaintiffs' property, where the same borders the 50 foot private right-of-way.

7. The Plaintiffs have the right to access their property, from the 50 foot private right-of-way, at any point or points along their southern property line, where the same borders the 50 foot private right-of-way.

16

16

8. If this Court were to have found that the language creating the express easement was ambiguous, the circumstances surrounding the creation of the easement manifest the intent that access to the Plaintiffs' property, from the 50 foot right-of-way, was not to be limited to a single point.

9. The language of the grant of express easement, when construed along with the circumstances known to the parties at the time of the grant, support the conclusion that Alma Dunn Beahm, the grantor, intended that the grant confer to grantees the right of access, to and from the 50 foot private right-of-way, at any point or points along the southern line of Plaintiffs' property.

10. The Defendant has obstructed the full use of the easement by placing a split rail fence along the northern edge of the right-of-way and along a portion of the Plaintiffs' southern property line.

11. The Defendant's split rail fence substantially interferes with the Plaintiffs' ability to use their easement.

12. The Plaintiffs' right to relief is clear.

13. Substantial interference, of a permanent nature, with an easement owner's use of their easement is a legal wrong for which injunctive relief is appropriate. *See Trimble Services v. Franchise Royalty Interstate Corp.*, 285 A. 2d 113, 117 (Pa. 1971).

14. The Plaintiffs are entitled to injunctive relief, enforcing their rights under the easement.